**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WANJUAN MEDIA (TIANJIN) CO., LTD. a.k.a.
PILOT FILM AND TELEVISION MEDIA
(TIANJIN) CO., LTD.,

                    Plaintiff,

      v.

AMAZON.COM, INC., AMAZON.COM
SERVICES LLC, and "JOHN DOES" 1-5,

                    Defendants.

Case No.: 1:22-cv-1434-JPO

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

**KEVIN KERVENG TUNG, P.C.**
Kevin K. Tung, Esq.
Ge Li, Esq.
Jiajie Cao, Esq.
Queens Crossing Business Center
136-20 38th Avenue, Suite 3D
Flushing, NY 11354
(718) 939-4633
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    STATEMENT OF RELEVANT FACTS ................................................ 2

The Joint Production Agreement and the Ownership of the Copyright............................ 2

The Joint Distribution Agreement Dated February 18, 2016 and the Transfer of the Copyright by Croton Culture to Croton Film and TV ................................................................................................ 3

The LeTV Distribution Agreement Dated March 7, 2016 and the Transfer of the Copyright to Horgos Croton ........................................ 4

The Settlement Agreement ...................................................................... 4

The Distribution Agreement with Hunan TV Station.......................................... 4

"General and I" was Published in China...................................................... 5

Amazon's Illegal Streaming of "General and I"............................................. 5

Amazon's Lack of Due Diligence.......................................................... 6

The Deal Memo Dated December 22, 2016 ................................................ 7

The Fair Market Value of The Distribution Price for "General and I"........................... 7

III.   ARGUMENT ............................................................................... 8

A.    Legal Standard for Motion for Summary Judgment under Federal Rule of Civil Procedure 56 ..................................... 8

B.    Amazon Has No Proper License to Distribute the "General And I" on Its Prime Video Platform ................................. 9

C.    The Three-Year Limitation on Damages ........................................... 11

D.      Wanjuan's Cross Motion Should Be Granted Because Amazon Has Infringed On the Wanjuan Media's copyright in "General and I.".......................15

IV.    CONCLUSION................................................................................................. 17

## **TABLE OF AUTHORITIES**

### Cases

*Actrade Liquidation Tr. v. HLC Indus. (In re Actrade Fin. Techs. Ltd.)*,
    Nos. 02-16212 (ALG), 02-16213 (ALG), 05-03657 (ALG),
    2007 Bankr. LEXIS 4400, at \*5-6 (Bankr. S.D.N.Y. June 20, 2007)................................ 9

*Allen v. Coughlin*,
    64 F.3d 77, 79 (2d Cir. 1995).......................................................................... 8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986)......................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..................................... 8

*Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*,
    No. 12 Civ. 5262, 2014 U.S. Dist. LEXIS 132108,
    2014 WL 4652548, at \*3 (S.D.N.Y. Sept. 18, 2014)......................................... 8

*Cohen Lans LLP v. Naseman*,
    No. 14 Civ. 4045, 2017 U.S. Dist. LEXIS 15547,
    2017 WL 477775, at \*3 (S.D.N.Y. Feb. 3, 2017).............................................. 8

*Davis v. The Gap, Inc.*,
    246 F.3d 152, 172 (2d Cir. 2001)............................................................... 15, 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)........................................ 15

*Jose Armando Bermudez & Co. v. Bermudez Int'l*,
    2000 U.S. Dist. LEXIS 12354,
    2000 WL 1225792, at \*10 (S.D.N.Y. Aug. 29, 2000)....................................... 15

*Lund's, Inc. v. Chemical Bank*,
    870 F.2d 840, 844 (2d Cir. 1989)............................................................... 8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014)............................................ 12, 13

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120, 124 (2d Cir. 2014)................................................................ 12

*Sohm v. Scholastic Inc.*,
    959 F.3d 39, 52, 54 (2d Cir. 2020)...................................................... 10, 13, 14

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*,
  41 F.3d 1570, 1580 (2d Cir. 1994)............................................................................ 12, 13

Statutes

17 U.S.C. § 106 .................................................................................................... 14, 15, 16

17 U.S.C. § 106(5) .......................................................................................................... 14

17 U.S.C. § 204 (a) ......................................................................................................... 10

17 U.S.C. § 501(a) .................................................................................................... 14, 16

17 U.S.C. § 504(b) .......................................................................................................... 15

17 U.S.C. § 507(b) ........................................................................................... 10, 12, 13, 14

Other Authorities

5 Patry on Copyright § 17:77 .......................................................................................... 15

Rules

Fed. R. Civ. P. 56 .............................................................................................................. 8

Fed. R. Civ. P. 56(a) .......................................................................................................... 7

Fed. R. Civ. P. 8(c) ................................................................................................... 12, 13

## I.   **PRELIMINARY STATEMENT**

In this case, Wanjuan Media (Tianjin) Co., Ltd. a.k.a. Pilot Film and Television Media (Tianjin) Co. Ltd. (the "Plaintiff" or "Wanjuan Media") sued defendants Amazon.com, Inc. and Amazon.com Services LLC (collectively as "Amazon" or "Defendants") for copyright infringement. See Plaintiff's First Amended Complaint (Dkt. No. 19).

Wanjuan Media's First Amended Complaint alleges that Amazon committed unlicensed, unauthorized, and infringing use of the Chinese historical/costume TV show "General and I" (as defined *infra*) on Amazon's Prime Video platform. See *Id.* ¶ 24.

In this motion, Amazon moves for summary judgment arguing that (1) Amazon has the proper license under a distribution agreement with DramaFever Corp. (the "DramaFever") to stream the TV show "General and I" on its Prime Video platform; (2) the damages sought by Wanjuan Media is outside of the three-year limitation under the Copyright Act.

Amazon's motion for summary judgment should be denied in its entirety.

**Frist,** Amazon's claimed license to distribute the "General and I" is defective because Amazon's content provider DramaFever failed to obtain the proper distribution rights for the "General and I" and Amazon did not conduct any independent due diligence to verify DramaFever's distribution rights.

**Second,** there is a genuine issue about when Amazon ceased distributing the "General and I" on its Prime Video platform. The three-year limitation on damages is waived because Amazon failed to assert it as an affirmative defense in the answer. Further, even assuming Amazon indeed stopped streaming the "General and I" three years before this litigation (which is questionable), Amazon's continuous display of images from all 62 episodes of the "General and

I" on its product detail page until October 2021 was still infringing on Wanjuan Media's copyrights and within the three-year limitation period of the Copyright Act.

Plaintiff also cross moves for summary judgment and its motion should be granted because there is no triable issue that Amazon infringed on Wanjuan Media's copyright when Amazon continued displaying images from the "General and I" on its Prime Video platform until October 2021 after Warner Bros. instructed Amazon to discontinue all DramaFever related contents, including the "General and I," in October 2018.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiff Wanjuan Media is a TV show production and distribution company based in Tianjing, China. See Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts, which is filed herewith, at ¶ 1 (hereinafter "Pl. 56.1 at ¶ __"). Wanjuan Media once used the name Pilot Film and Television Media (Tianjin) Co., Ltd. ("Pilot") or Paile Film and TV Media (Tianjin) Co., Ltd. ("Paile"), and changed to the current name on January 27, 2021. Pl. 56.1 at ¶ 2.

One of TV Shows produced by Wanjuan Media is called "General and I" (Chinese name is "孤芳不自赏") (hereinafter referred to as the "General and I"), which is a historical/costume TV show in Chinese language with a high production quality and strong cast. *Id.* at ¶ 3.

**The Joint Production Agreement and the Ownership of the Copyright**

On or about April 22, 2015, Wanjuan Media (at that time still called Pilot Film and Television Media (Tianjin) Co.) entered into a "TV Series Joint Production Agreement" (the "Joint Production Agreement") with another Chinese company named Shanghai Croton Culture Media, Co., Ltd. ("Croton Culture") to produce the "General and I" TV show. *Id.* at ¶ 4.

Under the Joint Production Agreement, Wanjuan Media owns the copyright of the "General and I" together with Croton Culture. *Id.* at ¶ 4.

**The Joint Distribution Agreement Dated February 18, 2016 and the Transfer of the Copyright by Croton Culture to Croton Film and TV**

On or about Feb. 18, 2016, Wanjuan Media (Pilot) entered into another agreement called "Project Joint Investment, Filing, and Distribution Cooperation Agreement Regarding the TV Series 'General and I'" (the "Joint Distribution Agreement") with Croton Culture and Shanghai Croton Film and TV Media Co., Ltd. (the "Croton Film and TV"). Wanjuan Media agreed to it by applying its corporate stamp on the signature page of the agreement. Wanjuan Media's company practice has always been that the company approves the contract it entered by applying its corporate stamp. See *Id.* ¶¶ 6-7.

Under the Joint Distribution Agreement, Croton Culture transferred all its rights (including the copyright and distribution rights) in the "General and I" to Croton Film and TV. See *Id.* ¶ 8.

Provision 5.2 of the Joint Distribution Agreement also provides that "Party A and Party B[1] shall be jointly responsible for signing distribution contracts related to the TV Series with external parties, and Party A and B shall each maintain a copy of distribution contracts for their files." *Id.* at ¶ 9.

Provision 5.1 of the Join Distribution Agreement further provides "Party A shall be responsible for the distribution and communications of the TV Series on new media and overseas media, and Party B shall be responsible for the distribution and communications of the TV Series on traditional media." The new media mentioned here primarily means internet or online platforms. The traditional media instead means TV stations. See *Id.* at ¶ 10.

---

[1] Party A is Croton Film and TV and Party B is Paile (or Pilot) Film and TV Media (Tianjin) Co., Ltd. (later called Wanjuan Media since January 27, 2021) under the Joint Distribution Agreement. See **Ex. 7** to Li Decl. at p. 15 (bates number P000065 or Amazon_Wanjuan_000165).

**The LeTV Distribution Agreement Dated March 7, 2016 and the Transfer of the Copyright to Horgos Croton**

Subsequently, Croton Film and TV further transferred its rights in the "General and I," including but not limited to the copyright and distribution rights, to another company called Horgos Croton Culture Media Co., Ltd. (the "Horgos Croton"). Such assignment of rights took place before March 7, 2016 because Horgos Croton entered into a distribution agreement with a third party company[2] on March 7, 2016 as a co-owner of the "General and I" (the "LeTV Distribution Agreement"). See *Id.* at ¶ 11.

Under the LeTV Distribution Agreement, LeTV purchased the distribution rights of the "General and I" within the Chinese market for a total amount of ¥ 450,000,000 RMB (about $65,345,238 USD in current rate). See *Id.* at ¶ 12.

In the LeTV Distribution Agreement, Wanjuan Media approved this agreement by applying its stamp on the signature page and no additional signature was provided. See *Id.* at ¶ 13.

**The Settlement Agreement**

And on September 28, 2017, Horgos Croton and Wanjuan Media (still called Paile Film and TV Media at that time) entered into a settlement agreement (the "Settlement Agreement") with LeTV and its affiliated companies to resolve disputes arising out of the LeTV Distribution Agreement. Parties to the Settlement Agreement approved agreement by applying their corporate stamps and no party provided additional signatures except Horgos Croton. See *Id.* at ¶ 14.

**The Distribution Agreement with Hunan TV Station**

---

[2] Tibet LeTV Information Technology Co., Ltd. (the "LeTV")

Around March 2016, Wanjuan Media also contacted and located a traditional TV station[3] to distribute the "General and I" in China. Wanjuan Media entered into a distribution agreement with this TV station and Wanjuan Media notified and sent a copy of the distribution agreement to Croton Film and TV and Horgos Croton. See *Id.* at ¶ 15.

Under the distribution agreement with the Satellite TV Channel of Hunan Radio and Television Station, the distribution right of the "General and I" in Chinese market was worth about ¥228,000,000 RMB (about $33,110,657 USD in current rate). See *Id.* at ¶ 16.

**"General and I" was Published in China**

The "General and I" was first published in China in January 2017. Horgos Croton and Pilot (or Paile) Film and Television Media (Tianjin) Co., Ltd. were identified as the co-production companies at the ending page of the "General and I." See *Id.* at ¶ 17.

**Amazon's Illegal Streaming of "General and I"**

Wanjuan Media did not realize Amazon distributed the "General and I" on its Prime Video platform until May 2021, when a friend of Wanjuan Media's president told her that the "General and I" was on Amazon's platform. See *Id.* at ¶ 18.  And Wanjuan Media did not receive any income distribution from Croton Culture, Croton Film and TV, or Horgos Croton for the distribution of the "General and I" on Amazon's Prime Video Platform. See *Id.* at ¶ 19.

After it became aware of Amazon's illegal distribution, Wanjuan Media hired attorneys to conduct investigations and took screenshots of the Amazon Prime Video pages containing information about "General and I." (the "Amazon Screenshots"). See *Id.* at ¶ 20.

In the Amazon Screenshots, not only all 62 episodes of the "General and I" were displayed on Amazon Prime Video's website, but also there are customers reviews and comments dated as late as November 2020 depicting in the screenshots. See *Id.* at ¶ 21.

---

[3] Satellite TV Channel of Hunan Radio and Television Station. (the "Hunan TV Station")

On September 17, 2021, Wanjuan Media's attorneys sent out a warning letter to Amazon regarding the infringement of Wanjuan Media's copyright in the "General and I" and demanded that Amazon remove all "General and I" related contents from its Prime Video platform. See *Id.* at ¶ 22.

On October 4, 2021, Wanjuan Media's attorneys received an email response from Amazon stating that "Following your Notice of Copyright Infringement dated September 17, 2021, this message is to inform you that **as of October 4, 2021**, the title: 'Gufang Bu Zishang' is no longer available to stream, rent or purchase on Prime Video." (Emphasis added). "Gufang Bu Zishang" is a transliteration of "孤芳不自赏", which is translated as "General and I." See *Id.* at ¶ 23.

**Amazon's Lack of Due Diligence**

On February 28, 2023, Amazon's Rule 30(b)(6) representative David Ahlvers testified that Amazon did not conduct any independent due diligence to verify Amazon Prime Video's content providers have the proper distribution rights in the TV shows or films contents before Amazon entered into distribution agreements with these content providers; instead, Amazon solely relied on the content providers' representations and warrantees that they did have the rights to distribute the contents. See *Id.* at ¶ 24.

More specifically, Mr. Ahlvers testified that Amazon did not conduct any due diligence to verify the distribution rights on any contents provided by DramaFever, including the "General and I" TV Show at issue in this case. See *Id.* at ¶ 25.

If Amazon had done any due diligence, it would have been easy to find out that Horgos Croton was a co-owner of the copyright in the "General and I," instead of Croton Culture, and

that Pilot (or Paile) Film and Television Media (Tianjin) Co., Ltd. was another owner of the copyright. See **Exhibit F** to Tung Decl.

**The Deal Memo Dated December 22, 2016**

In this litigation, Amazon produced an agreement with the title of "Deal Memo" between Shanghai Croton Culture Media, Co., Ltd. ("Croton Culture") and DramaFever Corp. ("DramaFever"). The Deal Memo was dated December 22, 2016. See *Id.* at ¶ 26.

The Deal Memo was signed by representatives of both Croton Culture and DramaFever. Croton Culture also approved this agreement by applying its corporate stamp on the signature page. See *Id.* at ¶ 27.

At the time when Croton Culture entered into the Deal Memo with DramaFever, Croton Culture had no rights in the "General and I" because Croton Culture had transferred all its rights in the "General and I" to Croton Film and TV on or about February 18, 2016 under the Joint Distribution Agreement, and Croton Film and TV later transferred its rights in the "General and I" to Horgos Croton before March 7, 2016 according to the LeTV Distribution Agreement. See Pl. 56.1 at ¶¶ 6, 8, 11 and 14.

**The Fair Market Value of The Distribution Price for "General and I"**

The "General and I"'s distribution in the Chinese market was worth about ¥ 450,000,000 RMB (about $65,345,238 USD in current rate) for new media (online platform) and was worth about ¥228,000,000 RMB (about $33,110,657 USD in current rate) for traditional TV Station. See Zhao Decl. ¶¶ 15, 17.

The Chinese costume TV shows have a distribution price ranging from $600,000 to $1,500,000 per episode in the U.S. market and because "General and I" has 62 episodes, the total

distribution price for "General and I" at the least should be more than 38 million USD in the U.S. market. See Zhao Decl. ¶¶ 30-31.

### III.   ARGUMENT

#### A.  Legal Standard for Motion for Summary Judgment under Federal Rule of Civil Procedure 56

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Not all facts, however, are material. A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986). For a dispute over material facts to be "genuine," the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Assertions of fact, moreover, must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 U.S. Dist. LEXIS 15547, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, i.e., that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 U.S. Dist. LEXIS 132108, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the

non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (quoting *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

**B.   Amazon Has No Proper License to Distribute the "General And I" on Its Prime Video Platform**

In this motion, Amazon claims that it has a proper license from DramaFever to stream the "General and I" on the Prime Video platform. See Defs.' Mem. in Supp. of Defs.' Mot. 5-7 ("Defs.' Mem.") (Dkt. No. 41). However, DramaFever obtained the purported right to distribute the "General and I" from Croton Culture through an agreement called "Deal Memo" dated December 22, 2016. See Pl. 56.1 at ¶ 26; also see **Ex. 2** to Li Decl.

At the time of December 22, 2016, Croton Culture had no rights to sign the Deal Memo with DramaFever and to grant a license to DramaFever because Croton Culture had transferred all its rights in the "General and I" to Shanghai Croton Film and TV Media Co., Ltd. (the "Croton Film and TV") on or about February 18, 2016 in the Joint Distribution Agreement, and Croton Film and TV later transferred its rights in the "General and I" to Horgos Croton Culture Media Co., Ltd. (the "Horgos Croton") before March 7, 2016. See Pl. 56.1 at ¶¶ 6, 8, 11 and 14.

In other words, the chain of title had been broken for DramaFever to have a proper license through the "Deal Memo" dated December 22, 2016.

Amazon's argument that the Joint Distribution Agreement is invalid because Wanjuan Media (still called Paile or Pilot at that time) did not sign the agreement is misplaced.

**First,** Wanjuan Media properly authorized and agreed to the Joint Distribution Agreement by applying its corporate stamp. See Pl. 56.1 ¶ 7. Further, contrary to Amazon's argument, the portion of the Joint Distribution Agreement to transfer all rights in "General and I" from Croton Culture to Croton Film and TV is enforceable anyway, irrespective of whether

Wanjuan Media signs it, because both Croton Culture and Croton Film and TV have signed it and approved it. See **Ex. 7** to Li Decl. at p. 14 (bates no. P-000077); see also *Actrade Liquidation Tr. v. HLC Indus. (In re Actrade Fin. Techs. Ltd.)*, Nos. 02-16212 (ALG), 02-16213 (ALG), 05-03657 (ALG), 2007 Bankr. LEXIS 4400, at *5-6 (Bankr. S.D.N.Y. June 20, 2007)("If either party to the contract has signed an otherwise sufficient memorandum, it is enforceable against the signer as the party to be charged, even though no memorandum has been signed by the other party for whose benefit it is being enforced. This is reasonable and leads to no injustice.")

**Also**, to transfer the copyright ownership, the Copyright Act only requires that "an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." See 17 U.S.C. § 204 (a). Wanjuan Media's signature is simply not required for Croton Culture to transfer its ownership to Croton Film and TV.

**Further**, even though Wanjuan Media and Croton Film and TV are joint owners of "General and I," the Joint Distribution Agreement limits the joint owners' rights to grant license or distribution rights to third parties.

The Joint Distribution Agreement requires that any distribution agreement with third parties being jointly signed by both Wanjuan Media and Croton Film and TV and each party kept a copy of such distribution agreement. See Pl. 56.1 at ¶ 9. However, the Deal Memo was signed by neither of the parties required under the Joint Distribution Agreement; instead, it was only signed by Croton Culture. See *Id.* at ¶ 27. Therefore, the Deal Memo is unenforceable and not properly executed.

Because the Deal Memo between Croton Culture and DramaFever is problematic and not enforceable, Amazon does not have a proper license from DramaFever to stream and distribute the "General and I" on its Prime Video platform.

### C.  **The Three-Year Limitation on Damages**

Amazon then argues that the damages claimed by Wanjuan Media is outside of the three-year limitation imposed by Section 507(b) of the Copyright Act and the Second Circuit interpretation case *Sohm v. Scholastic Inc.,* 959 F.3d 39, 52, 54 (2d Cir. 2020). Defs.' Mem. 7-8.

However, there is a triable issue when Amazon ceased streaming the "General and I" on its Prime Video platform.

**First,** after Wanjuan Media became aware of Amazon's streaming of "General and I" on Prime Video, it hired attorneys to conduct investigations and took screenshots of the Amazon Prime Video pages containing information about "General and I" in August 2021 (the "Amazon Screenshots"). See *Id.* at ¶ 20.

In the Amazon Screenshots, not only images from all 62 episodes of the "General and I" were displayed on Amazon Prime Video's website, but also there are customers reviews and comments dated as late as November 2020 depicting in the screenshots. See *Id.* at ¶ 21.  The Amazon Screenshots suggest that it is possible Amazon was still streaming "General and I" at the time when the customers made these comments on Prime Video's website.

**Next**, on September 17, 2021, Wanjuan Media's attorneys sent out a cease and desist letter to Amazon regarding the infringement of Wanjuan Media's copyright in the "General and I" and demanded that Amazon remove all "General and I" related contents from its Prime Video platform. See Pl. 56.1 at ¶ 22. On October 4, 2021, Wanjuan Media's attorneys received an email response from Amazon stating that "Following your Notice of Copyright Infringement dated

11

September 17, 2021, this message is to inform you that **as of October 4, 2021**, the title: 'Gufang Bu Zishang' is no longer available to stream, rent or purchase on Prime Video." (Emphasis added). "Gufang Bu Zishang" is a transliteration of "孤芳不自赏", which is translated as "General and I" in English. See *Id.* at ¶ 23.

In this motion, Amazon submits a declaration from Katherine Bransten stating that she was the person who drafted Amazon's response email dated October 4, 2021. See Bransten Decl. (Dkt. No. 46). The identity of this witness was never disclosed in Amazon's Rule 26 initial disclosure or in Amazon's responses to Wanjuan Media's interrogatories asking for witness identity who has knowledge of this case. According to Bransten, her Oct. 4, 2021 email meant Amazon removed the product detail page for the "General and I" after Wanjuan Media's complaint, but did not mean that Amazon made "General and I" unavailable to stream, rent or purchase after Wanjuan Media's complaint. See *Id.* However, because of Amazon's late disclosure, Wanjuan Media did not have its opportunity to depose Bransten on her statement and the procedures she took to verify the availability of "General and I" on Prime Video and relevant documents and information she reviewed in reaching the conclusion. Therefore, even considering Bransten's declaration submitted in this motion together with the email dated Oct. 4, 2021, there is still a question when Amazon ceased streaming the "General and I." And the Court is required to view all evidence in the light most favorable to the non-moving party.

**Further,** an affirmative defense is waived by the defendant's failing to assert the defense in the answer. See Fed. R. Civ. P. 8(c); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994).

In this case, Amazon did not assert the three-year limitation on damages as an affirmative defense in its answer to Plaintiff's First Amended Complaint. See Amazon's Answer (Dkt. No.

20). Instead, in its 12th Affirmative defense, Amazon states that "[t]he Complaint, and the claim for relief alleged in it, is barred, in whole or on part, by the applicable statute of limitations." See *Id.*

However, the statute of limitation is different from the three-year limitation on damages. The Copyright Act's statute of limitations for copyright infringement is "three years after the claim accrued." See 17 U.S.C. § 507(b). The Second Circuit Court follows the "discovery rule," pursuant to which "an infringement claim does not "accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014).

In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014), the Supreme Court considered whether the equitable defense of laches was applicable to claims for copyright infringement under the U.S. Copyright Act given its three-year statute of limitations. After *Petrella,* whether the "discovery rule" is still good law is in question.

The Second Circuit Court confirmed in *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020) that "while some language in *Petrella* is perhaps consistent with the injury rule, in light of the Supreme Court's direct and repeated representations that it has not opined on the propriety of the discovery or injury rules, it would contravene settled principles of stare decisis for this Court to depart from its prior holding" invoking the discovery rule. *Id.* at 50. But in assessing a three-year damages bar, the court reached a different conclusion: "Despite not passing on the propriety of the discovery rule in *Petrella*, the Supreme Court explicitly delimited damages to the three years prior to the commencement of a copyright infringement action." *Id.* at 51. Therefore, the Second Circuit held that "we must apply the discover rule [sic] to determine when a copyright

infringement claim accrues, but a three-year lookback period from the time a suit is filed to determine the extent of the relief available." *Id.* at 52.

Since the "discovery rule" is still good law in the Second Circuit, Wanjuan Media's copyright infringement claim is not time-barred by the three-year statute of limitation under 17 U.S.C. § 507(b) because Wanjuan Media did not discover Amazon's infringing conducts until May 2021.

Even assuming Amazon's argument is true that Wanjuan Media's claim might be barred by the three-year limitation on damages as stated in *Sohm* decision, such affirmative is waived because Amazon failed to specifically assert that in its answer. See Fed. R. Civ. P. 8(c); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994).

**Last but not least,** it is undisputed that Amazon had been displaying images from all 62 episodes of the "General and I" on the Prime Video website until as late as August 2021. See Pl. 56.1 ¶¶ 20-21; also see **Ex. D** to Tung Decl. Bransten's declaration also confirmed that Amazon removed its product detail page about the "General and I" on Oct. 4, 2021. See Bransten Decl. ¶ 6.

Among the privileges a copyright holder enjoys under the Copyright Act is the exclusive right "to display the copyrighted work publicly" "in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, **including the individual images of a motion picture or other audiovisual work[.]**" See 17 U.S.C. § 106(5) (emphasis added). A party is directly liable for copyright infringement if it exercises an exclusive right of a copyright owner without authorization. See 17 U.S.C. § 501(a).

In this case, even assuming Amazon had a proper license to stream and display the "General and I" related contents on its own platform (it is highly questionable as stated above),

14

such license was terminated by Warner Bros. in October 2018. See Defendants' 56.1 Statement of Undisputed Material Facts at ¶ 18 (hereinafter "Defs. 56.1 at ¶ __").

By continuing displaying images from all 62 episodes of the TV show after October 2018 was clearly infringing upon Wanjuan Media's copyright. Because August or October 2021 is within three years before the commencement of this lawsuit (this case was filed on Feb. 22, 2022, Dkt. No. 1), Wanjuan Media's copyright infringement claim is not barred by the limitation under Section 507(b) of the Copyright Act and *Sohm v. Scholastic Inc.*, 959 F.3d 39, 52, 54 (2d Cir. 2020).

### D. **Wanjuan's Cross Motion Should Be Granted Because Amazon Has Infringed On the Wanjuan Media's copyright in "General and I."**

In order to establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).

Pursuant to the Copyright Act, holders of copyrights in "United States works" may not institute a copyright infringement suit "until preregistration or registration has been made." 17 U.S.C. § 411(a). However, non-United States works—generally, works first published outside the United States in a foreign country that is a signatory to the Berne Convention—are exempt from registration. See 5 Patry on Copyright § 17:77; accord *Jose Armando Bermudez & Co. v. Bermudez Int'l*, 2000 U.S. Dist. LEXIS 12354, 2000 WL 1225792, at *10 (S.D.N.Y. Aug. 29, 2000).

In this case, "General and I" was a foreign TV show first published in January 2017 in China. Pl. 56.1 at ¶ 17. Because China is a signatory to the Berne Convention, "General and I" is

exempt from the registration requirements for the copyright infringement claim. Also, Wanjuan Media has established that it is a rightful co-owner of the "General and I." See Pl. 56.1 at ¶ 5.

As an owner of the copyright, Wanjuan Media enjoys the exclusive rights to: reproduce "General and I"; prepare derivative works based on "General and I"; distribute "General and I" to the public; perform "General and I" publicly; display "General and I" publicly, including the individual images within "General and I." See 17 U.S.C. § 106.

A prevailing plaintiff may recover its actual damages caused by the infringement and the defendant's profits attributable to the infringement that are not also included in any damages calculation. See 17 U.S.C. § 504(b)

In appropriate circumstances, a plaintiff can recover the fair market value of a license for the defendant's infringing use as a measure of damages. See *Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001).

In this case, even though it is disputable whether Amazon ceased streaming the "General and I" on its Prime Video platform in October 2018 due to the closure of DramaFever operation, it is undisputable that Amazon continued displaying the images from each of the 62 episodes of "General and I" on the Prime Video until October 2021. See **Exhibit D** to Tung Decl.; see Pl. 56.1 at ¶¶ 20-21; also Pl. 56.1 at ¶ 23.

As fully stated in section III. B. of this memo, Amazon's claimed license from DramaFever is problematic because of the broken chain of title from Croton Culture. Even leaving that dispute aside, it is unquestionable that after October 2018 Amazon did not have any license or right to continue displaying images from the "General and I" on the Prime Video because Warner Bros. had terminated the DramaFever operation at that time. Defs. 56.1 at ¶¶ 5, 18.

Since the right to display "General and I" publicly, including individual images within "General and I," is one of Wanjuan Media's exclusive rights in the "General and I" (see 17 U.S.C. § 106), there is no triable issue that Amazon is directly liable for copyright infringement by displaying "General and I" and its images until October 2021 without Wanjuan Media's authorization or a proper license to do so. See 17 U.S.C. § 501(a).

As to the damages caused by Amazon's infringement, Wanjuan Media will seek to recover its actual damages caused by the infringement. One of the ways to calculate Wanjuan Media's actual damages is the fair market value of a license for Amazon's infringing use. See *Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001).

The "General and I"'s distribution in the Chinese market was worth about ¥ 450,000,000 RMB (about $65,345,238 USD in current rate) for new media (online platform) and was worth about ¥228,000,000 RMB (about $33,110,657 USD in current rate) for traditional TV Station. See Zhao Decl. ¶¶ 15, 17. And the Chinese costume TV shows have a distribution price ranging from $600,000 to $1,500,000 per episode in the U.S. market and because "General and I" has 62 episodes, the total distribution price for "General and I" at the least should be more than 38 million USD in the U.S. market. See Zhao Decl. ¶¶ 30-31.

Wanjuan Media's Cross Motion is only seeking summary judgment on Amazon's liability and respectfully requests the damages to be determined in the trial.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that Defendants' Motion for Summary Judgment be denied in its entirety, that Plaintiff's Cross Motion for Summary be granted in its entirety.

Dated: Queens, New York
     April 11, 2023

Respectfully submitted,

KEVIN KERVENG TUNG, P.C.
*Attorneys for Plaintiff*


By: Ge Li, Esq.
    Jiajie Cao, Esq.
    Kevin K. Tung, Esq.
Queens Crossing Business Center
136-20 38th Avenue, Suite 3D
Flushing, NY 11354
(718) 939-4633

18